mitment, upon a petition stating, that they were confined under color of the authority of the United States. The habeas corpus was granted. And now at this day, the gaol keeper produced the prisoners in court, and made return of the writ. By the return it appeared, that the prisoners were in custody under a warrant of commitment from a justice of the peace, alleging that they were Portuguese seamen, belonging to a Portuguese vessel now in Boston, and that they had been convicted, before him, of a desertion from the vessel. The warrant was directed to the keeper of the gaol, requiring him, in the name of the commonwealth of Massachusetts, to keep the bodies of the petitioners, "that they may be secured, and forth coming, to proceed on the voyage in said ship, according to their agreement, and to be delivered thence for that purpose by some justice of the peace, &c. unless otherwise delivered by due course of law."

The cause was shortly argued by Parker for the petitioners, and by William Sullivan for the master of the vessel, upon whose complaint they had been committed.

## Case No. 3,968.

### Ex parte DOLL.

[27 Leg. Int. 20;[1] 7 Phila. 595; 11 Int. Rev. Rec. 36.]

District Court, E. D. Pennsylvania. 1870.

UNITED STATES COMMISSIONERS—POWER TO COMMIT FOR CONTEMPT.

A commissioner of a United States court has not power to commit a citizen for an alleged contempt.

[Cited in Re Mason, 43 Fed. 515.]

The relator [George Doll] in this case was duly assessed by the assistant assessor of his district in the early part of the year 1868, upon his sworn return for an income tax, due the United States for the year 1867; this return was not subjected to contestation of any character, was returned to the collector, and the tax paid. The same thing occurred in 1869, in relation to the tax for 1868. On October 20th, 1869, Peter Lane, a special assistant assessor of incomes in the district in which the relator resided, called at the place of business of George Doll and Co. (of which firm the relator was a member) and demanded an inspection of their books for the purpose of verifying the returns of income aforesaid. All the books he desired to see were shown him, and he was permitted to make extracts from them ad libitum. The next day William B. Elliott, the assessor of the same district, issued his summons requiring the relator, on the 26th day of October then next, to appear before him at his office, to give evidence concerning his income for the years 1867 and 1868, and to produce all books of account relating thereto; this summons on its face charged that the returns of income aforesaid, "in the opinion of the assessor, were false and fraudulent, or contained an under-statement of undervaluation." It was disregarded. On the 12th day of November following, the assessor made complaint before Henry Phillips, Jr.,

[1] [Reprinted from 27 Leg. Int. 20, by permission.]

a commissioner appointed by the circuit court of the United States for this district, who issued a warrant for the apprehension of the relator, reciting that he was "charged on oath" with having delivered to an assessor of internal revenue of the United States a return, in the opinion of the assessor, false and fraudulent, and that after being duly summoned to appear, testify and produce his books in relation thereto, he had neglected and refused so to do. The proceedings on the hearing of the case were simply the examination of Peter Lane as a witness, and the making of an order by the commissioner on December 1, that the relator produce his books to the assessor, before noon, on December 4th, "or be committed for contempt." With this order the relator refused compliance, and was committed. A writ of habeas corpus was at once obtained and served, and upon its immediate return the relator bailed till the hearing, without objection by the district attorney.

Upon the hearing, Nathan H. Sharpless, Esq., for the relator, made the following points: 1st. That the 116th section of the act of June 30th, A. D. 1864 [15 Stat. 281], under which the income tax is levied, is unconstitutional and void, as undertaking to levy a capitation, or, at all events, a direct tax, by the rule of uniformity, and not that of apportionment. 2nd. That so much of the 14th section of the same act as invests the assessors with power to compel a citizen, who has once made his return of income under oath, to produce his books and give evidence in regard to the same after its correctness had been challenged by the officer, is unconstitutional and void, as infringing upon the provision (article 5, amend. 1789, Const. U. S.): "Nor shall any person * * * be compelled in any criminal case to be witness against himself." 3d. That the power sought to be conferred upon the assessor by the last section is really the "judicial power of the United States," which by the constitution can only be exercised by judges holding their offices for the term of good behavior, and not by officers who are removable at any moment, probably at the discretion of the president, certainly at that of the president and senate. 4th. That the proceedings authorized by the same section are an infringement of the citizen's constitutional right of trial by a jury in every criminal case. The federal legislature cannot create a new criminal offence unknown to the common law or our statute law at the time of the adoption of the constitution, and which was not then punishable summarily by "attachment as for contempt," and provide for its ascertainment and punishment now by any other than the ordinary machinery of a trial by jury at common law. 5th. The extraordinary remedies provided by the same section are not to be used in re-assessing income duties; if there is any occasion to re-assess them, it is

to be done under the 118th section of the same act, which contains no provision for an "attachment as for a contempt." 6th. If the five preceding points are all decided against us, the proceedings here are so radically defective and hopelessly incurable that the relator must be discharged.

Aubrey H. Smith, Dist. Atty. for the United States.

CADWALADER, District Judge, said that some of the constitutional questions argued in this case on the part of the relator were scarcely open ones at this day. Upon one point, as to the irregularity of the proceedings before the commissioner, he had relieved the counsel for the relator from argument until he had heard the district attorney in support of them, and what had followed from the district attorney had not changed his original impressions on that point, and the relator must be discharged. He would further say that he very much doubted the power of congress to invest a commissioner with the authority in a proceeding originally instituted before him, to summarily commit a citizen for an alleged contempt. This was an exercise of the judicial power of the United States, which, under the constitution, could not be entrusted to an officer, appointed and holding his office in the manner in which these commissioners were appointed and held their offices.